2009 OK CIV APP 104

**Jack HOPKINS, Plaintiff/Appellant,**

v.

**Willie WEST, Defendant/Appellee.**

**No. 105,428.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 29, 2009.

Stephen J. Modovsky, Kameran R. Ritzhaupt, Sidney A. Martin II, Lori K. Rogers, Modovsky Law Office, P.C., Tulsa, OK, for Plaintiff/Appellant.

Roger R. Williams, Tulsa, OK, for Defendant/Appellee.

JANE P. WISEMAN, Vice Chief Judge.

¶1 Jack Hopkins (Hopkins) appeals from orders of the trial court sustaining Willie West's (West) demurrer and overruling Hopkins' motion for new trial. The issues on appeal are whether the trial court (1) erred in sustaining the demurrer, or (2) abused its discretion when it overruled the motion for new trial. After reviewing the record on appeal and applicable law, we find that the trial court erred in sustaining the demurrer and denying the motion for new trial. We reverse and remand to the trial court to allow Hopkins a new trial on the merits of his replevin claim.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Hopkins filed a lawsuit alleging he is engaged in the jewelry business, he dated West from June 1, 2004, to August 31, 2004, and during that time, he loaned West various pieces of jewelry for her personal use that were valued at more than $10,000. Hopkins claims that West is wrongfully in possession of the jewelry and that the jewelry is "lawfully and rightfully" his property. Hopkins requested judgment against West and immediate possession and delivery of the jewelry.

¶ 3 In her answer, West claims that she dated Hopkins from June 2004 through November 2004. She claims, however, that the items of jewelry were gifts from Hopkins to her, not loans.

¶ 4 In his amended petition, Hopkins realleged the facts in his original petition and additionally stated that he "does not have an actual cash value of each piece of jewelry, for he had acquired the jewelry but not yet had it appraised." Hopkins attached an exhibit that included a description and approximate value for each piece of jewelry. In her answer, West denied the values placed on the jewelry by Hopkins and requested the court "to require strict proof thereof."

¶ 5 A jury trial was held on September 5, 2007. Hopkins testified that he is a collector of jewelry and that he is able to buy stones and jewelry wholesale. He claimed that he started buying jewelry for himself and his former wife in 1989 or 1990. He divorced his wife in 2000. He testified that he bought jewelry with no intention of selling it because he was trying to stockpile the jewelry as an investment. He claimed that he dated a woman named Wunzie for nine months, that he let her wear some of his investment jewelry, and that he also gave her three pieces of jewelry as gifts. When they ended their relationship, Wunzie returned all of the jewelry except the three pieces Hopkins had given her as gifts.

¶ 6 Hopkins testified that he gave West four gifts: a framed picture, a heart-shaped piece of jewelry with rubies, an ankle bracelet, and a digital camera. Hopkins then testified about the jewelry he claimed that he let West wear. The following is a list of the jewelry with the amount Hopkins testified he paid for each piece: (1) gold Geneva watch ($1,200); (2) diamond cross ($800); (3) white gold chain ($200); (4) V-shaped diamond necklace (approximately $200); (5) ruby and diamond necklace ($350 or $250); (6) 20–inch chain ($250); (7) an emerald and diamond piece ($2,800); (8) 18–inch pink-white pearl necklace ($1,200); (9) black pearl bracelet ($400); (10) amethyst bracelet ($400); (11) emerald and diamond bracelet ($400 or $450); (12) garnet bracelet ($400); (13) diamond necklace ($1,600); (14) blue topaz bracelet ($300); (15) amethyst necklace ($400); (16) multi-stoned bracelet (no purchase price given); (17) blue topaz earrings ($150); (18) emerald earrings ($200); (19) earring "enhancers" ($250); (20) man-made emerald drop ($50); (21) blue sapphire earrings ($200); (22) ruby earrings ($300); (23) gold and garnet earrings ($200); (24) antique pendant ($650); (25) amethyst drop "pearl enhancer" ($250); (26) heart-shaped earrings ($50); (27) blue topaz ring ($350); (28) opal, diamond, and ruby ring ($650); (29) diamond and ruby antique ring ($1,000); (30) blue sapphire ring ($350); (31) emerald and diamond ring ($2,600); (32) white engagement ring (no purchase price given); (33) four-stone emerald ring ($800); (34) black pearl necklace ($500); (35) six-baguette stone diamond ($1,200); (36) onyx stud earrings ($50); (37) fire-opal studs ($50); (38) snake necklace ($350); (39) garnet studs ($50); (40) diamond earrings ($50); and (41) emerald and diamond bracelet ($1,200).

¶ 7 Hopkins testified that he allowed West to borrow all of these pieces of jewelry. He claimed that, when West would take a piece of jewelry out of its box to wear, she would occasionally place the jewelry back in its box "but most of the time she just put it in her— not her jewelry but her makeup bag, it was a little makeup bag that she had that she kept all of her jewelry in." Hopkins stated it did not bother him that West did not put the jewelry back in the boxes because he trusted her. He testified it was his intention that if they should break up, West would return the jewelry because the items of jewelry "were not a gift." Hopkins asked West to return the jewelry, but she refused to do so. He

testified he gave West money to buy a condominium but did not ask for the money or the condominium back after they broke up because the money was a gift.

¶ 8 West testified Hopkins would ask her if she wanted to wear the jewelry, and after she wore it, she would offer it back to him. West claimed that Hopkins would tell her that he wanted her to wear the jewelry because he thought of her as his wife. She admitted, however, that he never told her to take the jewelry and do whatever she wanted with it. She did claim that he gave her all of the jewelry to keep forever.

¶ 9 At the close of Hopkins' case in chief, West demurred to the evidence "on the grounds and for the reason that [Hopkins] has not stated a cause of action, in that [Hopkins] has not proven the value or—the value of the jewelry that he alleges was not given as gifts to Ms. West, and it would simply lead the jury up to pure speculation insofar as values are concerned" and that Hopkins "has not proven the ownership of the jewelry and the individual values." The trial court found Hopkins needed "to produce an appraiser or some kind of appraisal for the value, the actual value of the property." The trial court sustained West's demurrer. In an order filed October 1, 2007, the trial court stated that it sustained the demurrer "on the grounds that [Hopkins] had failed to prove actual value of the individual items of personal property, citing the case of [*Barton v. Warren*, 2005 OK CIV APP 56, 120 P.3d 484."]

¶ 10 Hopkins filed a motion for new trial, which the trial court overruled. Hopkins now seeks appellate review.

### STANDARD OF REVIEW

¶ 11 "A demurrer to the evidence should be overruled unless there is no competent evidence or reasonable inference from evidence tending to establish a cause of action." *In re D.R.*, 2001 OK CIV APP 21, ¶ 10, 20 P.3d 166, 168. "We review a trial court's order denying a motion for new trial for error of a pure question of law or for an abuse of discretion which is arbitrary, clearly against the evidence, and manifestly unrea-

sonable." *Robinson v. Oklahoma Nephrology Assocs., Inc.*, 2007 OK 2, ¶ 6, 154 P.3d 1250, 1253.

### ANALYSIS

¶ 12 We find that the trial court erred in sustaining the demurrer. The case cited by West and by the trial court in its decision lists the elements on which a plaintiff must present evidence to establish a prima facie case of replevin as follows:

1) a description of the property claimed; 2) that the plaintiff is the owner of the property and is entitled to its immediate possession; 3) that the property is wrongfully detained by the defendant; 4) the actual value of the property; 5) that the property was not taken in execution on any order or judgment; and 6) that the prayer for relief requests that the court issue an order for the immediate delivery of the property.

*Barton v. Warren*, 2005 OK CIV APP 56, ¶ 3, 120 P.3d 484, 485. The *Barton* Court cites and relies on 12 O.S. Supp.2002 § 1571 as the source for these elements. Section 1571 states the following:

A. The plaintiff in an action to recover the possession of specific personal property may claim the delivery of the property at the commencement of suit, as provided herein.

1. The petition must allege facts which show:

a. a description of the property claimed,

b. that the plaintiff is the owner of the property or has a special ownership or interest therein, stating the facts in relation thereto, and that he is entitled to the immediate possession of the property,

c. that the property is wrongfully detained by the defendant,

d. the actual value of the property, provided that when several articles are claimed, the value of each shall be stated as nearly as practicable,

e. that the property was not taken in execution on any order or judgment against said plaintiff, or for the payment of any tax, fine or amercement assessed against him, or by virtue of an order of

delivery issued under this chapter, or any other mesne or final process issued against said plaintiff; or, if taken in execution or on any order or judgment against the plaintiff, that it is exempt by law from being so taken, and

f. the prayer for relief requests that the court issue an order for the immediate delivery of the property.

¶ 13 Subsection A is clearly permissive: it states that a plaintiff *"may* claim the delivery of the property at the commencement of suit." *Id.* (emphasis added). Here, in neither his petition nor his amended petition did Hopkins seek an order directing West to deliver the jewelry at the commencement of the lawsuit.

¶ 14 In *Barton,* the plaintiff sought the return of a 1957 Corvette or compensation for its value. The plaintiff filed a petition for the replevin of the car which he claimed he loaned to his cousin. *Barton,* 2005 OK CIV APP 56 at ¶¶ 3–4, 120 P.3d at 485. The plaintiff testified that he bought the car in 1971 for $1,000 or $1,200 and then spent approximately $8,000 to fix up the car and race it. *Id.* at ¶ 4, 120 P.3d at 485. A wreck in 1975 caused minor damage to the car, and the plaintiff did not fix the damage. *Id.* The plaintiff's cousin asked him if he could take the car, fix it, and race it. *Id.* The cousin kept the car for 29 years, and the plaintiff admitted that the cousin could have spent $60,000 on the car during that time. *Id.* at ¶ 5, 120 P.3d at 485. After the cousin died, the plaintiff, who still held title to the car, asked for the car's return, but the person in possession of the car refused to return it. *Id.* at ¶ 5, 120 P.3d at 486. The trial court granted the possessor's demurrer.

¶ 15 The Court of Appeals reversed the trial court's decision and held that plaintiff established a prima facie case of replevin. *Id.* at ¶ 2, 120 P.3d at 485. The *Barton* Court found that the trial court erred because it engaged in a weighing of the evidence on the issue of ownership, which is inappropriate when considering a demurrer to the evidence. *Id.* at ¶ 7, 120 P.3d at 486.

¶ 16 We note that the *Barton* decision lists "actual value of the property" as one of the elements of a prima facie case, and the evi-dence discussed in the opinion is that the plaintiff testified about how much he paid for the car, how much he put into fixing the car, and how much his cousin may have spent on the car. The *Barton* Court did not, as West would urge, use this as a basis for affirming the trial court's sustention of the demurrer, by finding this evidence insufficient to estab-lish the "actual value" element of a prima facie case.

¶ 17 In the present case, Hopkins testified about how much he paid for the items of jewelry he sought to recover. It is well-established in Oklahoma law that, as one claiming ownership, he could testify as to the value of his personal property. His testimo-ny about how much he paid for the items, much like that in *Barton,* is sufficient to withstand a demurrer on this point and re-quire submission of the issue of value to the jury, if recovery of certain items is not ob-tainable. We find no basis for holding that, as stated by the trial court here, the plaintiff must have an appraisal or present the testi-mony of an appraiser to establish an actual value of the jewelry.

¶ 18 It appears, however, that Hopkins was not seeking recovery of the jewelry's value, but rather to the extent possible, recovery of the jewelry items themselves, which is the essence of a replevin claim. A cogent and succinct discussion of the nature of replevin is found in *Brook v. James A. Cullimore & Co.,* 1967 OK 251, 436 P.2d 32, in which it is stated, "The primary object of statutory re-plevin is the recovery of specific personal property and not of money." *Id.* at ¶ 4, 436 P.2d at 34. West admitted that she still had most of the jewelry in her possession. Title 12 O.S.2001 § 1580 provides, "In an action to recover the possession of personal property, judgment for the plaintiff may be for posses-sion, or for the recovery of possession, or the value thereof in case a delivery cannot be had, and of damages for the detention."

¶ 19 A demurrer should not have been sustained merely because Hopkins did not have an appraisal done of the property or have an appraiser testify at trial. Even though he presented evidence concerning the value of the items, he was not required to if

he is seeking possession and West admits having possession of most of the items. In requesting relief in the form of replevin, Hopkins was clearly seeking to recover items he claimed to own which West admittedly still possessed.

¶ 20 In *Hivick v. Oklahoma–Colorado Oil & Gas Co.*, 1923 OK 49, ¶ 0, 89 Okla. 181, 212 P. 420, 420 (syl. no.1 by the court), the Supreme Court of Oklahoma stated:

> A plaintiff in replevin should allege in his petition facts which show that he is the owner of the property in controversy, describing it, or that he has a special ownership or interest therein, stating the facts in relation thereto; that he is entitled to the immediate possession of the property, and that the defendant wrongfully detains the same from him.

Hopkins clearly met these requirements in his petition and presented evidence establishing these facts at trial. Hopkins' claims should have been submitted to the jury.

¶ 21 A statement of actual value in the petition, and the presentation of evidence of such value if requested by either party, is required if a party is seeking pre-judgment possession of property. These requirements clearly relate to, and are essential for, setting a replevin bond and, if circumstances dictate, a redelivery bond. 12 O.S.2001 §§ 1573, 1573.1, and 1577. Upon the trial of an action for replevin, if Hopkins seeks only possession which West admits she has, then no evidence of value is required. If possession of certain items cannot be had and he seeks to recover their value, then Hopkins must present evidence of their actual value based on his own or expert testimony.

¶ 22 Based on the foregoing, we find that the trial court erred as a matter of law when, citing the holding in *Barton*, it sustained the demurrer. It was an abuse of discretion not to grant Hopkins a new trial in order to correct its error in sustaining the demurrer.

## CONCLUSION

¶ 23 We hold that it was error to sustain a demurrer to the evidence and an abuse of discretion not to grant a new trial to correct this error. We reverse and remand this matter to the trial court to allow Hopkins a new trial on the merits of his claim for replevin.[1]

¶ 24 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, P.J., and GOODMAN, J., concur.

---

1. Based on this result, West's request for attorney fees and costs is denied.